**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1375-22

MASOOD T. MALIK,

    Plaintiff-Appellant,

v.

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY,

    Defendant-Respondent.

_____

Submitted April 29, 2024 – Decided May 13, 2024

Before Judges Marczyk and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1738-18.

Kalavruzos, Mumola, Hartman, Lento & Duff, LLC, attorneys for appellant (Lawrence E. Popp, on the brief).

Weir Attorneys, attorneys for respondent (Jeffrey J. Dunn, of counsel; Dylan T. Trochtenberg, on the brief).

PER CURIAM

Appellant Masood Malik appeals from the October 21, 2022 order granting summary judgment in favor of respondent New Jersey Manufacturers Insurance Company ("NJM"). Based on our review of the record and applicable legal standards, we affirm.

We derive the following facts from the record. On July 18, 2016, Malik was involved in a motor vehicle accident with another vehicle that left the scene. Several days after the accident, he and his son saw the same car and his son took a photograph of the car's license plate. By September 2016, Malik retained counsel who identified the owner and insurer of the other vehicle through a New Jersey Motor Vehicle Commission ("MVC") search. An MVC certification of vehicle registration, dated September 21, 2016, identified Alice F. Crawford as the owner of a black Infinity FX35 with plate number ending in GRM, and Progressive Insurance Company ("Progressive") as the insurer under a policy number ending in 671.

On October 3, 2016, Malik, through counsel, sent a claim letter to Progressive, alleging he sustained personal injuries "in an automobile accident on July 18, 2016, as a result of your insured's negligence. The vehicle was owned by and operated by your insured, Alice Crawford." By letter dated

August 11, 2017, Progressive acknowledged the claim and requested additional information from Malik.

In September 2017, Malik sent Progressive a "CD-ROM containing the CCTV footage . . . which recorded the subject accident."  On November 27, 2017, Progressive denied Malik's claim "due to lack of cooperation from [its] insured to complete an accurate investigation to make a coverage decision." Progressive did not identify the name or address of its insured in the declination letter.

By letter dated March 19, 2018, Malik requested NJM "open an uninsured motorist claim" and enclosed "a copy of the police report which indicates a phantom vehicle was involved in the subject accident."  Although it is not mentioned in the March 19 letter, NJM admitted that a copy of Progressive's November 27, 2017 declination letter was also enclosed.

On March 22, 2018, NJM sent an acknowledgment letter to Malik, noting it "intend[ed] to rely on the statute of limitations as a defense in this matter and that the running of the statute of limitations date [would] preclude any [uninsured motorist] claims."  By letters dated April 24, June 22, and August 23, 2018, NJM requested Malik provide additional information, including any "video footage related to" the accident.  Malik's counsel did not provide any

A-1375-22

video footage to NJM in response to its requests.

On August 16, 2018, Malik filed this action against NJM seeking uninsured motorist ("UM") benefits for personal injuries he allegedly sustained in the accident. He claimed he "was struck from behind by a phantom vehicle that left the scene directly after the accident." Malik's counsel certified "there [were] no other parties of whom [he] [was] aware who should be joined in this action."

On August 20, 2019, NJM deposed Malik. He testified:

> [Malik]. I was on Clinton Avenue. My light is red. I see [Crawford's] car crossing the street in the right side. My son told me dad, this is the car that hit us? I say definitely, light brown color, the car [has] [a] bumper that is broke[n].
>
> . . . .
>
> I see the lady, same lady. When I see the first time, not too far for the two cars, that time is the same. She had the glasses on. I tell my son wait, when she [is] moving we go behind the lady. . . . I go behind her. . . . I tell my son take the picture for the number plate. He took the picture for the number plate.

Malik was asked if he believed that photograph showed the car that impacted him on the day of the accident. He responded, "I [do] not believe, I am 100 percent sure this car hit me."

The photograph Malik's son took depicts the rear of an Infinity FX35 with

4

the same license plate identified in the MVC certification as registered to Alice Crawford. Malik also testified that a few days after the accident he visited a gas station located at the intersection where the accident occurred and obtained still images from the gas station's CCTV footage that showed Crawford's vehicle leaving the scene of the accident. Malik testified he provided the photograph his son took and the still CCTV images from the gas station to his attorney. NJM learned of the photograph Malik's son took, the still images from the CCTV, and the fact that Malik identified Crawford's vehicle as the "phantom vehicle" for the first time at his deposition.

On July 10, 2020, NJM moved for summary judgment arguing that Malik, despite having identified the owner of the vehicle that hit him soon after the accident occurred, failed to bring suit against the tortfeasor before the two-year statute of limitations expired, thereby extinguishing NJM's subrogation rights. On March 12, 2021, the court denied NJM's motion without prejudice. The court found there were unresolved factual issues, including the identity of the Progressive policy owner and the operator of the Infinity.

Alice Crawford died in March 2021. NJM thereafter attempted to conduct a deposition of her daughter, Desiree Crawford, on several occasions, but she did not appear. On April 12, 2022, an investigator retained by NJM obtained an

affidavit from Desiree stating that on July 18, 2016: (1) her mother owned an Infinity FX35 with the license plate ending in GRM; (2) the car was involved in an accident; and (3) Desiree was operating the car at the time of the accident.

NJM renewed its motion for summary judgment. On October 21, 2022, the court entered an order granting NJM's motion supported by an oral opinion. The court found discovery left "no doubt as to who the tortfeasor was" and it was "beyond peradventure" that Malik uncovered the identity of the alleged tortfeasor relatively soon after the incident. The court concluded there were no genuine issues of material fact and NJM established "its entitlement to summary judgment as a matter of law due to [Malik's] failure to name the driver of the phantom vehicle" before the statute of limitations expired, thereby extinguishing NJM's subrogation rights. The court also found Malik breached his obligation to cooperate with NJM by failing to respond to its requests for information before the statute of limitations expired.

On appeal, Malik argues there are genuine issues of material fact as to the credibility and scope of Desiree Crawford's affidavit and other unanswered questions that "bear directly upon Progressive's contractual obligations under [its] policy of liability insurance with Alice Crawford." More particularly, Malik contends "Progressive would likely prevail in a coverage challenge,

thereby leaving [him] with a valid UM claim." Malik also argues summary judgment was improperly granted because "NJM had timely notice[ of] the UM claim to preserve its subrogation rights."

We review a grant of summary judgment de novo, Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021), "under the same standard that govern[ed] the court's determination." Goldhagen v. Pasmowitz, 247 N.J. 580, 593 (2021). We "must 'consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Meade v. Twp. of Livingston, 249 N.J. 310, 327 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). However, we give no deference to a trial court's legal determinations. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).

The relationship between an insured and an insurance carrier is contractual. The obligation to afford UM coverage, however, is statutory. N.J.S.A. 17:28-1.1(a)(2); see Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 333 (1996). A UM carrier that pays benefits to an insured has the right to subrogate the insured's claim against the tortfeasor to permit the carrier to

recover from the tortfeasor the UM benefits paid to its insured. Thus, insureds are affirmatively obligated to provide their carriers with notice "of the institution of suit against the tortfeasor." Id. at 340-41.

In the context of an underinsured motorist ("UIM") claim, our Supreme Court held an insured forfeits coverage if the insured fails to notify the insurer of the UIM claim and consequently extinguishes the insurer's subrogation rights. Ferrante v. N.J. Mfrs. Ins. Grp., 232 N.J. 460, 473-74 (2018) (applying Rutgers Cas. Ins. Co. v. Vassas, 139 N.J. 163, 167 (1995)). We have also recognized that "the Supreme Court's rationale in [Vassas], protecting a UIM insurer's right of subrogation, applies equally to a situation . . . where a UM claimant has failed to give notice in a timely fashion." Brown v. Selective Ins. Co., 311 N.J. Super. 210, 214 (App. Div. 1998) (internal citation omitted) (citing Vassas, 139 N.J. at 170).

The statute of limitations applicable to a personal injury claim is two years. N.J.S.A. 2A:14-2(a). Malik, therefore, had two years from July 18, 2016, to assert a personal injury claim against the Crawfords. He failed to timely assert a claim despite knowing the identity of the owner of the vehicle that allegedly hit him no later than September 2016. Malik's personal injury claim against the Crawfords is time-barred as a result of his inaction.

A-1375-22

Critical to NJM's motion was that its right to pursue a subrogation claim against the Crawfords was precluded by the time Malik filed this action against NJM. An insurer asserting a subrogation claim stands in the shoes of the insured and its subrogation rights are no greater than the insured's rights against the tortfeasor. Aetna Ins. Co. v. Gilchrist Bros., 85 N.J. 550, 560-61 (1981) ("The underpinning of subrogation is its derivative nature. . . . [T]he rights of the insured beneficiary . . . become the rights of the subrogated insurer."). It necessarily follows, therefore, that the statute of limitations for a subrogation claim runs and expires at the same time as the limitations period for the underlying action. Vassas, 139 N.J. at 175-76. By failing to timely assert a claim against the Crawfords, Malik deprived NJM of its right to subrogation in the event it paid UM benefits to Malik.

Malik's contention that NJM could have filed suit against the Crawfords upon receipt of his initial notice of claim is not supported by the record. Malik's initial claim letter enclosed only the police report and Progressive's declination letter. Neither of those documents contained any information identifying the Crawfords. In addition, Malik failed to provide NJM with the CCTV "video footage" or the photograph of the Infinity he used to identify Alice Crawford as the owner despite NJM's numerous requests for any such evidence. NJM first

9

learned Malik was in possession of that evidence and had definitively identified Alice Crawford as the owner of the Infinity during discovery and long after the statute of limitations expired.

The trial court correctly found there was no dispute Malik identified the owner of the alleged "phantom vehicle" well before the statute of limitations expired and simply failed to timely file a complaint. By failing to meet the statute of limitations, Malik extinguished NJM's subrogation rights and forfeited any potential claim for UM benefits under his NJM policy.

Malik's claim that there are genuine issues of material fact that "bear directly upon Progressive's contractual obligations under [its] policy of liability insurance with Alice Crawford" misses the mark. The legal question at issue is whether NJM is obligated to afford UM benefits to Malik under the NJM policy, not whether Progressive would or would not have prevailed in a coverage dispute with the Crawfords. Malik's arguments regarding Progressive's alleged obligations under the policy it issued to Alice Crawford do not raise issues of material fact sufficient to defeat NJM's motion for summary judgment. Brill, 142 N.J. at 529 (quoting Judson v. Peoples Bank & Tr. Co. of Westfield, 17 N.J. 67, 75 (1954)) ("[W]here the party opposing summary judgment points only to disputed issues of fact that are 'of an insubstantial nature,' the proper disposition

10

is summary judgment.").

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11